United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMONN LAMAR BLINCOE,<br><br>Defendant. | Case No.: CR-13-70004-MAG (KAW)<br><br>DETENTION ORDER |

## I. BACKGROUND INFORMATION

Defendant Jamonn Lamar Blincoe is charged in a complaint with a violation of 18 U.S.C. § 924(c)(1)(A) (possession of a firearm in furtherance of a drug trafficking crime, and carrying a firearm during and in relation to a drug trafficking crime). On January 17, 2013, the United States moved for Defendant's detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f). Pretrial Services prepared a full bail study. On January 24, 2013, the court conducted a detention hearing. Defendant was present, in custody, and represented by counsel Gilbert Eisenberg. Assistant United States Attorney Brigid Martin appeared on behalf of the Government. For the reasons stated below, the court orders that Defendant be detained.

## II. LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community. Close cases should result in release: "[t]o give effect to the principle

that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

A person facing trial generally shall be released if some "condition, or combination of conditions . . . [can] reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). In non-capital cases, pretrial release should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f). At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767 F.2d at 1405.

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

The complaint charges that on or about December 11, 2012, Defendant fled from police and discarded a loaded 9 mm Glock Model 7 firearm, serial number AAB813, with a seventeen-round capacity. Upon arresting Defendant, law enforcement recovered thirteen individually wrapped baggies of marijuana.

///

DETENTION ORDER
CR-13-70004-MAG (KAW)                       2

### A. The Nature and Circumstances of the Offense and Weight of the Evidence

The offense charged in this case is possession of a firearm in furtherance of a drug trafficking crime, and carrying a firearm during and in relation to a drug trafficking crime. While this instance does not give rise to a rebuttable presumption of detention, at the time of his arrest, Defendant discarded a loaded firearm, and he was in possession of marijuana individually packaged for sale.

As to the weight of the evidence, while this is the least important factor, law enforcement recovered the loaded firearm that Defendant discarded while fleeing from police.

### B. The History and Characteristics of the Defendant and the Nature and Seriousness of the Danger to Any Person or the Community

Defendant is 18 years old and was residing with his mother in Hayward, California. He has a high school diploma, but has no employment history. Defendant admitted to regular marijuana use and abusing cough syrup as a mood stimulant.

Defendant's criminal record dates back to 2009, when he was arrested as a juvenile for robbery, which is a crime of violence. The Government proffered that during the robbery, Defendant and other known gang members beat up another juvenile and took his backpack. In that instance, however, Defendant was ultimately convicted of a wardship misdemeanor for fighting/noise/offensive words in 2010, and was sentenced to 90 days of probation, a fine, and a program. Defendant been arrested for gun-related offenses four times, including in 2012 when he sustained a wardship felony conviction for carrying a concealed weapon and was sentenced to 36 months of probation. And three months later, Defendant was arrested for the same offense. At that time he had already turned 18, and the Government has indicated that it may also charge Defendant with that offense. Defendant's active probation commenced on March 9, 2010, and was unsuccessfully terminated on January 23, 2013.

Defendant is a member of the Baby Gas Team, a subset of the Acorn criminal street gang in Oakland, California. Even though Defendant resides in Hayward, all of his arrests took place in Oakland, which shows that he is purposefully and willfully associating with Oakland gang members. In addition to him traveling to Oakland to engage in criminal activity, members of his

DETENTION ORDER
CR-13-70004-MAG (KAW)                3

gang travel to Hayward to associate with him. Since turning 18 years of age in September 2012, Defendant has been arrested twice with guns and drugs with other gang members. In addition, prior to his arrest for the current offense, outgoing jail calls from gang members (charged with murder) to Defendant revealed that they were trying to locate a "backpack" to possibly destroy evidence. Defendant is, therefore, willingly participating in gang activity.

Also after Defendant's arrest, law enforcement obtained a photo that Defendant had posted on Twitter in 2011—a social media website—that depicted Defendant with several blunts presumably containing marijuana in his mouth, cough syrup in one hand, and two firearms in his waistband. Defendant's Twitter username is @DonkeyGasPYN, with "Donkey" being Defendant's street name, "Gas" representing his gang, and "PYN" is an acronym for his further gang subset the "Presidential Young Niggas."

### C. Risk of Nonappearance

Factors that indicate Defendant poses a risk of nonappearance include his unemployment status, one prior FTA in a felony case, and his current drug use that includes regular marijuana and abuse of cough syrup. Defendant is facing a significant prison term of 25 years if the Government decides to charge a drug trafficking prior from 2012. Given that Defendant fled from officers at the time of his arrest, and his prior fail to appear on a separate felony matter, the fact that he is facing a significant term of incarceration makes it less likely that he will appear in this matter.

Defendant proposed his parents George Blincoe (father) and Sharnette Hankey (mother) as sureties. Pretrial interviewed his parents, neither of whom are viable sureties. He was residing with his mother at the time of his arrest, and she reportedly allowed juvenile gang members out on day passes to be in her home and smoke marijuana with Defendant. His father works two jobs, and while he makes a modest income, his living situation is temporary. In addition, both of Defendant's parents have criminal histories. For these reasons, it is unlikely that an unsecured bond would provide Defendant with sufficient moral suasion to abide by the conditions of pretrial release.

Defendant requested pretrial placement to a halfway house, where he would be subject to "lockdown." However, "lockdown" is not enforced by the halfway house, but rather Defendant would be merely instructed not to leave except as permitted by Pretrial Services. Also, Defendant was on active probation at the time of the alleged offense and had been since March 9, 2010. Since being placed on probation, Defendant has been arrested multiple times for battery, firearm, and drug-related offenses. All of this suggests that he is not amenable to community supervision. Given Defendant's propensity to travel to Oakland to engage in criminal activity, there would be nothing stopping him from walking away from the halfway house to continue the same behavior.

The Court notes that Defendant has used two alternate versions of his own true name.

### III.  CONCLUSION

In light of Defendant's criminal history, the nature of the instant offense, and the weight of the evidence, the Court finds that Defendant presents a danger to the community and a risk of nonappearance, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person or the community.

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: January 25, 2013

_Kandis Westmore_
KANDIS A. WESTMORE
United States Magistrate Judge